# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL HOUSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 1042 |
| v. ) | |
| ) | Jeffrey T. Gilbert |
| UNITED STATES OF AMERICA, ) | Magistrate Judge |
| ET AL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Michael Houston's ("Plaintiff's") Motion to Compel production of certain information withheld by Defendant United States of America ("Defendant") [Dkt.#30] that Plaintiff contends is relevant to Defendant's Motion to Dismiss [Dkt.#4]. For the reasons set forth below, Plaintiff's motion is denied.

## I. BACKGROUND

Plaintiff originally brought this suit in the Circuit Court of Cook County, Illinois, County Department, Law Division, against James Pecard ("Pecard"), a physician assistant ("PA"); Komed Holman Health Center ("Komed Holman" or "clinic"), a division of Near North Health Service Corporation ("NNHSC"); NNHSC; Vintage Pharmaceuticals, LLC d/b/a Qualitest Pharmaceuticals ("Qualitest"); and three unknown medical personnel defendants. Defendant removed the case to this Court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679 and 42 U.S.C. § 233, and Defendant was substituted as the sole federal party defendant in place of Pecard, Komed Holman, and NNHSC. Qualitest remains a party defendant as well.

1. **Plaintiff's Complaint**[1]

In his Complaint, Plaintiff alleges that in July 2011 he sought treatment at Komed Holman for pain in his right toe. Pecard, a PA at Komed Holman, attributed Plaintiff's pain to gout and prescribed him allopurinol, a generic drug manufactured by Qualitest. Plaintiff tried explaining to Pecard that he did not believe he had gout, but Pecard nonetheless placed Plaintiff on allopurinol for treatment of gout without a differential diagnosis and without proper monitoring for an adverse reaction. Pecard did not consult with a supervising physician before prescribing allopurinol and no physician reviewed the prescription. Pecard did not have a physician examine Plaintiff before he prescribed Plaintiff allopurinol. Pecard told Plaintiff he was a physician, and the clinic's nurses, receptionists, and other employees stated Pecard was a physician.

Plaintiff alleges that Pecard did not warn him of the risks associated with taking allopurinol, including Stevens-Johnson syndrome ("SCS"), blindness, and death, nor did Plaintiff have any knowledge of those risks. Plaintiff filled the allopurinol prescription and complied with the prescription regimen. On or about August 26, 2011, Plaintiff reported to the emergency room at the University of Chicago Hospital with severe eye pain, red eyes, and a small rash on his face. He was given eye medication and was discharged. Plaintiff returned to the emergency room on or about August 28, 2011 with a severe rash and severe eye pain. He was diagnosed with SCS over large portions of his body and was admitted to the intensive care burn unit.

Plaintiff alleges that SCS causes the skin to burn from the inside out, producing blisters and severe rashes. It may cause the skin to fall off the body. It may cause blindness in one or

---

[1] The facts summarized in this section are taken from Plaintiff's Complaint and assumed to be true only for the purpose of resolving Plaintiff's Motion to Compel.

2

both eyes. Test results revealed that the allopurinol prescribed by Pecard caused Plaintiff's SCS. Additional test results revealed that Plaintiff did not, in fact, have gout.

Plaintiff's eleven-count Complaint alleges negligence, battery, and willful and wanton conduct against Pecard for failing to inform a supervising physician before prescribing allopurinol, failing to have a physician examine Plaintiff before prescribing allopurinol, failing to provide Plaintiff the necessary information about allopurinol so that Plaintiff could make an informed decision on whether to take the drug, prescribing allopurinol without a differential diagnosis and despite Plaintiff opining that he did not have gout, failing to prescribe Plaintiff a safer alternative drug, and holding himself out as a physician. Plaintiff further alleges that Komed Holman, NNHSC, and the unknown medical personnel defendants acted negligently in failing to properly supervise Pecard. Plaintiff alleges defective design, consumer fraud, failure to warn, breach of express and implied warranty of fitness, and willful and wanton conduct against Qualitest.

**2. Defendant's Motion to Dismiss for Failure to Exhaust Administrative Remedies**

On February 18, 2014, Defendant filed a Motion to Dismiss [Dkt.#4], arguing that Plaintiff did not exhaust his administrative remedies as required under the FTCA in order to initiate an action in this court. Defendant argued that the FTCA is the exclusive jurisdictional basis for a common law tort claim against the United States or any employee of the United States while acting within the scope of his office or employment, and that no FTCA action can be initiated against the United States until a plaintiff has exhausted his administrative remedies. Motion to Dismiss [Dkt.#4] at 2.

Defendant asserted that, for purposes of this lawsuit, Pecard was an employee of Komed Holman, a division of NNHSC, a private entity that receives grant money from the Public Health

3

Service pursuant to 42 U.S.C. § 233. Motion to Dismiss [Dkt.#4] at 1. Although not stated explicitly, the practical effect of Defendant's assertion is that Pecard was an employee of the United States at all times relevant to the complaint and, as such, the FTCA is the only jurisdictional basis for Plaintiff's claim if Pecard was acting within the scope of his office or employment when he treated Plaintiff. Accordingly, Defendant argued, Plaintiff was required to present his claim to the appropriate federal agency and was not permitted to initiate this suit until the agency either denied his claim or failed to issue a final decision within six months of the date the claim was presented. Motion to Dismiss [Dkt.#4] at 2.

In support of its Motion to Dismiss, Defendant pointed out that Plaintiff's Complaint does not allege that Plaintiff ever presented an administrative claim to the appropriate federal agency. *Id.* Defendant also attached the declaration of Meredith Torres, a Senior Attorney in the General Law Division of the Office of the General Counsel for the Department of Health and Human Services ("Department"). Motion to Dismiss [Dkt.#4], Exh. A. Torres states that the Department's Claims Branch maintains a computerized database that contains records of the administrative tort claims filed with the Department. Motion to Dismiss [Dkt.#4], Exh. A at 1. If an administrative claim was filed with respect to NNHSC, it would appear in the database. Motion to Dismiss [Dkt.#4], Exh. A at 2. Torres searched the database and found no record of an administrative tort action filed by Plaintiff relating to Pecard, Komed Holman, and/or NNHSC. Motion to Dismiss [Dkt.#4], Exh. A at 2. Accordingly, Defendant moved to dismiss Plaintiff's FTCA claim for failure to exhaust administrative remedies. Motion to Dismiss [Dkt.#4] at 3.

4

### 3. Plaintiff's Counter-Motion to Allow for Limited Discovery

In response to Defendant's Motion to Dismiss, on March 10, 2014, Plaintiff filed a counter-motion to allow for limited discovery on the issue of whether Pecard was acting within the scope of his employment when he treated Plaintiff. [Dkt.#17]. Plaintiff argued that the Court does not have to accept Defendant's assertion that Pecard was acting within the scope of his employment, and listed a number of cases in which courts have determined that doctors employed by federally funded clinics did not act within the scope of their employment and thus were not covered by the FTCA. Counter-Motion [Dkt.#17] at 3-4. Plaintiff then argued that, should the Court determine that Pecard exceeded the scope of his employment, removal to this Court was improper and this case should be remanded to the Circuit Court of Cook County for lack of jurisdiction. Counter-Motion [Dkt.#17] at 4.[2]

Judge Lee granted Plaintiff's motion on April 3, 2014, allowing for limited discovery related only to the jurisdictional issues raised in Defendant's motion to dismiss. [Dkt.#20]. All remaining discovery was stayed. *Id.*

Subsequently, following entry of a protective order [Dkt.#29], Defendant produced to Plaintiff various documents related to the issue of whether Pecard was acting within the scope of his employment, including Pecard's collaborative agreement with NNHSC that sets forth the scope of his practice and prescriptive authority, a state mandated notice of delegated prescriptive authority for controlled substances, and Plaintiff's medical records. Def.'s Response Brief [Dkt.#45] at 2. Defendant objected to producing Pecard's and his supervising physicians' Illinois licensing numbers, the identity of all clinic personnel present at the time Plaintiff

---

[2] Plaintiff, however, actually alleges in his Complaint that Pecard was acting within the scope of this authority as an agent of Komed Holman when he treated Plaintiff. Complaint [Dkt.1-1] at ¶ 2.

5

received treatment, and the identity of all clinic patients present at the time Plaintiff received treatment. Def.'s Response Brief [Dkt.#45] at 2; Motion to Compel [Dkt.#30], Exh. B at 1-2. Defendant objected on various grounds, including that the information sought by Plaintiff was not relevant to the issue the Court needed to resolve to decide its Motion to Dismiss. *Id.*

### 4. Plaintiff's Motion to Compel

On July 23, 2014, Plaintiff filed a motion to compel Pecard's PA license number and the identities of all clinic personnel and patients who were present on the dates Plaintiff received treatment. [Dkt.#30]. In support of his motion, Plaintiff argues that Pecard acted beyond the scope of his employment if he held himself out to the public as a physician, and that the identity of other clinic personnel and patients is relevant because they would be able to testify whether Pecard held himself out as a physician. Motion to Compel [Dkt.#30] at 2. Judge Lee referred Plaintiff's Motion to Compel to this Magistrate Judge for ruling on July 29, 2014. [Dkt.#32].

On August 1, 2014, this Court ordered the parties to meet and confer in accordance with Local Rule 37.2 for the purpose of discussing and potentially resolving the matters set forth in Plaintiff's Motion to Compel. [Dkt.#39]. On August 28, 2014, Plaintiff advised Defendant that he had no objection with regards to Defendant not producing Pecard's license number, but continued to disagree with Defendant's withholding of the identities of the clinic personnel and patients present during Plaintiff's treatment. [Dkt.#45 at 4]. Therefore, the only remaining information at issue in Plaintiff's motion to compel is the identity of the personnel and patients present at the clinic when Plaintiff received treatment.

## II. DISCUSSION

In light of the narrow scope of discovery at this juncture, the controlling issue here is whether the information Plaintiff seeks in his Motion to Compel [Dkt.#30] is necessary for

6

Plaintiff to respond to Defendant's Motion to Dismiss [Dkt.#4]. Defendant's Motion to Dismiss assumes that Plaintiff's claims fall within the purview of the FTCA, which limits tort claims against the United States to those arising from "the neglect or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment.*" 28 U.S.C. § 1346(b) (emphasis added). Defendant contends Pecard, the government employee at issue here, was acting within the scope of his employment when he treated Plaintiff and that the FTCA therefore applies.

Plaintiff disagrees that whether Pecard was acting within or exceeded his scope of employment when treating Plaintiff should be decided as a matter of law in the context of Defendant's Motion to Dismiss. Plaintiff's Opposition to Motion to Dismiss [Dkt.#36]. He seems to be arguing, among other things, that, in this case, the facts determinative of the jurisdictional issue and the merits overlap so that decision of the jurisdictional issue should be deferred pending a decision on the merits. *Id.*

Given the limited discovery that the District Judge has permitted, the narrow question before this Court still is whether Plaintiff needs the information he seeks in his Motion to Compel to respond to Defendant's Motion to Dismiss. The Court finds that the identity of the personnel and patients present at the clinic when Plaintiff received treatment are not relevant to whether Pecard acted within the scope of his employment when he treated Plaintiff or reasonably calculated to lead to the discovery of admissible evidence in that regard. The Court, therefore, denies Plaintiff's Motion to Compel.

Whether a federal employee was acting within the scope of his employment is a legal question that is decided under state law. *See Snodgrass v. Jones*, 957 F.2d 482, 484. In Illinois, an employee's action falls within the scope of his employment when: "(a) it is of the kind he is

7

employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Id.* at 485. An employee's action is not within the scope of his employment when "it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.*

Defendant has produced to Plaintiff the collaborative agreement between Pecard and NNHSC, which explicitly sets forth the scope of Pecard's practice. Motion to Consider Late-Filed Exhibits [Dkt.#41], Exh. B. Section 1 of the collaborative agreement is entitled "Scope of Practice" and lists the various services Pecard is authorized to perform at NNHSC. Motion to Consider Late-Filed Exhibits [Dkt.#41], Exh. B at 1. The remaining sections of the collaborative agreement set forth Pecard's other responsibilities. For example, Sections 2 and 3 describe the extent of physician medical direction and consultation required for Pecard to treat patients, and Section 4 and Attachment B referenced therein lay out Pecard's prescriptive authority. Motion to Consider Late-Filed Exhibits [Dkt.#41], Exh. B at 2-5.

In deciding Defendant's Motion to Dismiss, the District Judge will, among other things, interpret the terms of the collaborative agreement to determine whether Pecard acted beyond the scope of his employment in treating Plaintiff. If he finds that the agreement is ambiguous, he may or may not consider extrinsic evidence that will assist him in interpreting that agreement. Testimony from other clinic personnel or patients who are not parties to that agreement is unlikely to be relevant to that analysis.

Whether Pecard generally held himself out to others as a doctor, rather than a PA, does not seem relevant to the narrow legal question at issue in the Motion to Dismiss. To the extent that Pecard's holding himself out as a doctor in treating Plaintiff is relevant to the issues to be

8

decided in the context of the Motion to Dismiss, however, Plaintiff alleges that Pecard held himself out to him as a physician "and told plaintiff he was a doctor before prescribing allopurinol." Complaint [Dkt.#1-1] at ¶ 19. Defendant's Motion to Dismiss presumably assumes the truth of Plaintiff's factual allegations. Testimony from clinic staff and other clinic patients about their interactions with or observations of Pecard is not likely to be relevant to the issue of whether Pecard acted within or outside of the scope of his employment when treating Plaintiff, the issue involved in this case.

In ruling on the Motion to Compel, the Court is not determining the scope of Pecard's employment. The Court is merely determining what evidence is relevant to that determination. In the Court's view, Plaintiff does not need the names of clinic personnel or patients in order to respond to Defendant's Motion to Dismiss, and the Motion to Compel therefore is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 22, 2014